IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

MALIBU MEDIA, LLC,

    Plaintiff,

v.                                                 Case No.: PWG-14-261

[REDACTED]

    Defendant.

## MEMORANDUM OPINION

Plaintiff Malibu Media, LLC ("Malibu") filed this action for copyright infringement under 17 U.S.C. §§ 101–122 against Defendant on January 28, 2014. Compl., ECF No. 1. Malibu has since filed a Motion for Default Judgment, ECF No. 34, to which Defendant has not responded. Having reviewed the filings, I find that a hearing is unnecessary in this case. *See* Loc. R. 105.6 (D. Md.). Malibu has demonstrated Defendant's liability and has established its entitlement to the damages and injunctive relief it seeks. Accordingly, I will grant Plaintiff's Motion for Default Judgment.

### Background

Malibu, a California-based company doing business as X-Art.com, alleges that Defendant violated the United States Copyright Act of 1976 ("Copyright Act") by using the BitTorrent file distribution network to distribute adult pornographic films subject to copyrights held by Malibu. Am. Compl. ¶¶ 29–30, ECF No. 19.

BitTorrent is a peer-to-peer file sharing system that allows users to interact with one another to distribute large files, including digital movie files. Am. Compl. ¶ 10. Individuals

often use BitTorrent to obtain and circulate infringed copyright content. George Ou, *Princeton Study – 99% of BitTorrent Files Pirated*, Digital Society (Jan. 29, 2012), ECF No. 34-3. The system allows users to distribute an entire file by sending small "bits" individually. Am. Compl. ¶ 12. Malibu alleges that its investigator, IPP International UG, downloaded one more or more "bits" of 25 of Malibu's copyrighted films from Defendant's Internet Protocol address ("IP address"). Am. Compl. ¶ 18. Those downloads are the basis for this claim.

Initially, Malibu identified Defendant only by an IP address assigned to a customer on a specific date by an Internet Service Provider ("ISP"). Compl. ¶ 9. Accordingly, Malibu moved to expedite discovery and serve a third-party subpoena on the ISP to obtain the identity of Defendant prior to a Rule 26(f) conference. ECF No. 4. The court granted the motion subject to conditions and limitations dictated by the sensitive nature of the action and the uncertainty surrounding the specificity of IP addresses. ECF No. 6. Malibu then filed an Amended Complaint against Defendant, to which Defendant has not responded. The Clerk entered a default, ECF No. 32, and Malibu then filed the pending motion for default judgment seeking an award of statutory damages, injunctive relief, and attorney's fees and costs, ECF No. 34.

### Standard of Review

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process when a party applies for default judgment. First, the rule provides that "when a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Following the Clerk's entry of default, "the plaintiff [then may] seek a default judgment." *Godlove v. Martinsburg Senior Towers, LP*, No. 14-CV-132, 2015 WL 746934, at *1 (N.D.W. Va. Feb. 20, 2015); *see also* Fed. R. Civ. P. 55(b). "The Fourth Circuit has a 'strong policy' that 'cases be decided on their merits.' " *S.E.C. v.*

*Lawbaugh*, 359 F. Supp. 2d 418, 420 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)). However, "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party." *Id.* at 420–22.

In determining whether to grant a motion for default judgment, the Court takes as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). If the Court finds that "liability is established, [it] must then determine the appropriate amount of damages." *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 484 (citing *Ryan*, 253 F.3d at 780–81). In order to do so, "the court may conduct an evidentiary hearing, or may dispense with a hearing if there is an adequate evidentiary basis in the record from which to calculate an award." *Mata v. G.O. Contractors Grp., Ltd.*, No. TDC-14-3287, 2015 WL 6674650, at *3 (D. Md. Oct. 29, 2015); *see also* Fed. R. Civ. P. 55(b).

### Discussion

Plaintiff moves for default judgment against Defendant for direct copyright infringement and seeks an award of statutory damages, injunctive relief, and attorney's fees and costs.

To establish copyright infringement liability, a plaintiff must prove two elements: (1) ownership of the copyright; and (2) copying of original constituent elements by the alleged defendant. 17 U.S.C. § 501(a); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Malibu has met its burden through its pleadings by alleging it owns the 25 copyrights that Defendant obtained and distributed through BitTorrent. *See* Am. Compl. ¶ 17. Exhibit B of the Amended Complaint supports Malibu's assertion of ownership over the 25 copyrights, and Exhibit A supports its assertion that those copyrights were downloaded, copied, and distributed from Defendant's IP address using BitTorrent. Am. Compl. Exs. A, B, ECF Nos.

19-1, 19-2. Because the court takes the well-pleaded allegations in a complaint as true upon entry of default, Malibu has established Defendant's liability for copyright infringement by default. See Ryan, 253 F.3d at 780. Accordingly, only questions of the appropriate relief remain.

Statutory Damages

Malibu requests statutory damages of $750.00 per video, for a total of $18,750.00. Pl.'s Mem. 9. Under § 504(a) of the Copyright Act, an infringer of copyright is liable for either: (1) the copyright owner's actual damages and any additional profits that the infringer has obtained; or (2) statutory damages as provided by the statute. 17 U.S.C. § 504(a). Section 504(c)(1) authorizes statutory damages in an amount "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C § 504(c)(1); see also Patrick Collins, Inc. v. Gillispie, No. 11-cv-01776-AW, 2012 WL 666001, at *3 (D. Md. Feb. 23, 2012). The court has broad discretion in setting the amount of statutory damages under the Copyright Act. Microsoft Corp. v. Grey Comput., 910 F. Supp. 1077, 1091 (D. Md. 1995) (citing Shell Oil Co. v. Commercial Petroleum, Inc., 928 F.2d 104, 108 (4th Cir. 1991)).

The court may also award a maximum of $150,000.00 in enhanced damages if a plaintiff proves the defendant committed the infringement willfully. 17 U.S.C. § 504(c)(2). Courts have determined that an award of enhanced damages under § 504(c)(2) is only appropriate when the plaintiff shows the infringer "either had actual knowledge that it was infringing the owner's copyrights or acted in reckless disregard of those rights." See Lowry's Reports, Inc. v. Legg Mason, Inc., 271 F. Supp.2d 737, 753 (D. Md. 2003). Plaintiff does not seek enhanced damages, and judges in this district have routinely refused to grant enhanced damage awards in cases similar to this. See, Malibu Media, LLC v. [Redacted], CCB-15-1700, 2016 WL 245235, at *1

4

(D. Md. Jan. 21, 2016); *Gillispie*, 2012 WL 666001, at *3. Accordingly, enhanced damages are not appropriate in this case.

When awarding statutory damages pursuant to § 504(c)(1), which allows awards between $750.00 and $30,000.00 per infringement, courts consider a variety of factors. *See Malibu Media, LLC v. [Redacted]*, 2016 WL 245235, at *2. Judge Blake identifies these factors:

> (1) [W]hether the defendant was the original provider of the infringed content to its distribution network; (2) whether, and how much, the defendant profited or saved in connection with the infringement; (3) plaintiff's actual losses; (4) whether the plaintiff's request would result in a "windfall"; (5) the deterrent effect of statutory damages; and (6) the defendant's willfulness and intent in infringing the plaintiff's protected content.

*Id.* Under the above analysis, Judge Blake determined the statutory minimum of $750.00 per infringed work was not only sufficient, but excessive. *Id.* at *2 n.2.

> The recent trend in courts across the country is to award the minimum statutory award of $750.00 per violation to Malibu or other plaintiffs in similar infringement actions. *See, e.g., Malibu Media, LLC v. [Redacted]*, 2016 WL 245235, at *1 (awarding $750.00 per work, totaling $92,250.00); *Malibu Media, LLC v. Powell*, No. 1:15-CV-1211, 2016 WL 26068, at *1 (M.D. Pa. Jan. 5, 2016) (awarding $750.00 per work, totaling $39,750.00); *Malibu Media, LLC v. Saari*, No. 1:14-cv-00860-JMS-MJD, 2015 WL 5056887, at *2 (S.D. Ind. Aug. 26, 2015) (awarding $750.00 per work, totaling $9,750.00); *Malibu Media, LLC v. Caswell*, No. 2:14-cv-837, 2015 WL 3822904, at *2 (S.D. Ohio June 19, 2015) (awarding $750.00 per work, totaling $21,750.00); *Malibu Media, LLC v. Funderburg*, No. 1:13-cv-02614, 2015 WL 1887754, at *4 (N.D. Ill. April 24, 2015) (awarding $750.00 per work, totaling $9,000.00). Prior to 2015, courts often awarded statutory damages between $1,500.00 and $2,500.00 per violation. *See, e.g., Malibu Media, LLC v. Cowham*, No. 3:13-cv-00162-PPS-CAN, 2014 WL 2453027, at *2 (N.D. Ind. June 2, 2014) (awarding $1,500.00 per work, totaling $36,000.00); *Malibu Media, LLC v. Goodrich*, No. 12-cv-01394, 2013 WL 6670236, at *11 (D. Colo. Dec. 18, 2013) (awarding $2,250.00 per work, totaling $36,000.00); *Malibu Media, LLC v. Brenneman*, No. 3:13-cv-00332-PPS-CAN, 2013 WL 6560387, at *3 (N.D. Ind. Dec. 13, 2013)(awarding $1,500.00 per work, totaling $16,500.00). Many of the recent cases, however, note the growing judicial concern with "the rise of so-called 'copyright trolls' in the adult film industry, meaning copyright holders who seek copyright infringement damages not to be made whole, but rather as a primary or secondary revenue stream and file mass lawsuits against anonymous Doe defendants with the hopes of coercing settlements." *Malibu Media, LLC v. Brenneman*, 2013 WL 6560387,

at *3 (citing *Third Degree Films v. Does 1–47*, 286 F.R.D. 188, 189-90 (D. Mass. 2012); James DeBriyn, *Shedding Light on Copyright Trolls: An Analysis of Mass Copyright Litigation in the Age of Statutory Damages*, 19 UCLA Ent. L. Rev. 79, 86 (2012)).

*Malibu Media, LLC v. [Redacted]*, No. DKC015-750, 2016 WL 3668034, at *3 (D. Md. July 11, 2016). An award of the statutory minimum for each of the 25 infringed works accomplishes will accomplish Malibu's goal of deterring infringers from engaging in piracy of its works. Accordingly, I will award Malibu the requested $18,750.00.

### Injunctive Relief

In addition to monetary damages, Malibu seeks injunctive relief pursuant to 17 U.S.C. §§ 502(a) and 503(b). Specifically, Malibu requests the Court (1) permanently enjoin Defendant from continuing to infringe the company's copyrights; (2) order Defendant to delete and forever remove digital media files relating to Malibu's copyrights from all of Defendant's computers; and (3) order Defendant to delete and forever remove the infringing copies of the copyrights Defendant has on his computers. Pl.'s Mem. 10.

As to Malibu's first request, § 502(a) provides that "[a]ny court having jurisdiction of a civil action arising under [the Copyright Act] may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). As to Malibu's second and third requests, § 503(b) provides further relief, stating that "the court may order the destruction . . . of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . . ." 17 U.S.C. § 503(b). To obtain a permanent injunction, "a plaintiff must show (1) irreparable injury, (2) remedies at law are inadequate to compensate for that injury, (3) the balance of hardships between the plaintiff and defendant warrants a remedy, and (4) an injunction would not disserve the public interest."

*Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015) (quoting *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 156–57 (2010)).

I find that Malibu has established each of the four elements. Damages cannot make Malibu whole because so long as Defendant retains copies of the infringed work on his computers, they will continue to be disseminated through BitTorrent, continuously compounding Malibu's injuries. *See* Pl.'s Mem. 11. Thus, Malibu has demonstrated irreparable injury and the inadequacy of remedies at law. The balance of hardships also favors Mailbu because any injury that Defendant would suffer as the as a result of the injunction would "be a result of [Defendant] ceasing the allegedly infringing conduct." *Medias & Co., Inc. v. Ty, Inc.*, 106 F.Supp.2d 1132, 1140 (D. Colo. 2000). Finally, the prevention of copyright infringement serves the public interest. Accordingly, I will grant Malibu's request for permanent injunction and destruction of digital media files and infringing copies of the company's work pursuant to 17 U.S.C. §§ 502(a) and 503(b) of the Copyright Act.

Attorney's Fees and Costs

Malibu requests $1,182.00 in attorney's fees and $475.00 in costs. Pl.'s Mem. 12–13; Hoppe Decl. ¶¶ 8–9, ECF No. 34-5. "In any action under [the Copyright Act], the court in its discretion may allow the full recovery of costs . . . the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505; *see also* Malibu Media, LLC v. [Redacted], 2016 WL 245235, at *1. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This approach is commonly known as the "lodestar" method. *Grissom v. The Mills*

*Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). In assessing reasonableness, the Fourth Circuit has instructed district courts to consider certain factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).

Here, Malibu's request for attorney's fees in the amount of $1,182.00 for 9.1 hours of work is reasonable. Plaintiff's counsel, Jon A. Hoppe, provides a declaration in support of the requested fees attesting that he devoted 1.9 hours to the litigation, while his paralegal devoted 7.2 hours to it. Hoppe Decl. ¶ 9. Counsel requests $300.00 per hour for himself and $85.00 per hour for the paralegal. *Id.* Because the hourly rates sought for both attorney and paralegal fees fall on the lower end of the guidelines set forth in the Local Rules, *see* Loc. R., App. B, additional documentation as to prevailing market rates is unnecessary in this case. Counsel's declaration includes sufficient detail, and the paralegal completed the vast majority of tasks, thereby demonstrating an effort to minimize the costs of litigation. Moreover, the time record does not reflect any overly redundant, excessive, or unnecessary work, and the number of hours is reasonable and well documented. Accordingly, there is no reason to adjust the lodestar, and the entire fee is approved.

Malibu also seeks $475.00 for costs incurred, $400.00 for a statutory filing fee and $75.00 for process service fees. Hoppe Decl. ¶ 8. "Costs that may be charged include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a

fee-paying client, in the course of providing legal services.' " *Trs. of the Nat'l Automatic Sprinkler Indus. Welfare Fund v. Westland Fire Prot., Inc.*, No. DKC 12-1421, 2014 WL 824121, at *3 (D. Md. Feb. 28, 2014) (citing *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988)). Here, the requested costs are reasonable.

Because Plaintiff's requests as to both attorney's fees and costs attributable to this claim are reasonable, the court will award Malibu attorney's fees and costs totaling $1,657.00.

### Conclusion

For the foregoing reasons, the Malibu's Motion for Default Judgment will be granted. Judgment will be entered for Malibu in the amount of $18,750.00 in damages and $1,657.00 in attorney's fees and costs. A separate order will follow.

Date: February 15, 2017

Paul W. Grimm
United States District Judge